UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONIA SCOTT,　　　　　　　　　　　　　　Case No. 10-12736

　　　　　Plaintiff,　　　　　　　　　　　　District Judge Avern Cohn

v.　　　　　　　　　　　　　　　　　　　　Magistrate Judge R. Steven Whalen

MICHIGAN DEPARTMENT OF
CORRECTIONS, ET AL.,

　　　　　Defendants.
_____/

## REPORT AND RECOMMENDATION

　　　　This is an employment discrimination case that was originally filed in the Washtenaw County Circuit Court, and removed to this Court on July 12, 2010. Plaintiff Tonia Scott, who was employed by the Michigan Department of Corrections ("MDOC"), filed claims under Title VII of the Civil Rights Act of 1962, 29 U.S.C. § 2000e, *et seq.* ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.* ("ELCRA"), naming a number of Defendants, including Stan Arrington, the former Human Resources Director at the Scott Correctional Facility. The Title VII claim was dismissed without prejudice, with this Court retaining supplemental jurisdiction over the ELCRA claim [Doc. #9].

　　　　Before the Court is Defendant Arrington's motion for summary judgment [Doc. #15], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

## I. FACTS

The Plaintiff was employed as a corrections officer at the Scott Correctional Facility. She began her employment in 2005. At the end of their first year, corrections officers are required to pass a physical fitness test, involving push-ups, sit-ups, and a step test. On September 25, 2006, Plaintiff took the test, passing the push-up and sit-up portions, but failing the step test. She was required to do "78 trips in 3 minutes," but completed only 70. *Defendant's Brief* [Doc. #15], Exhibit A. In his affidavit, *Defendant's Exhibit C*, ¶ 5, Mr. Arrington states that under MDOC Operating Procedure 02.06.111B, §E, "a failure on any portion of the physical fitness test constitutes a failure of the entire test." At ¶ 6, he states that policy permitted Plaintiff to take the test a second time, but that a failure on the second test would be grounds for dismissal.

A few days later, on September 28, 2006, the MDOC suspended the Plaintiff for the unrelated violation of permitting a prisoner to be escorted through the front gate. *Defendant's Exhibit D.* The Warden issued a stop entry order prohibiting Plaintiff from the prison grounds, and this order was not lifted until March 23, 2007. *Defendant's Exhibit E and F*.

The Plaintiff took her second physical fitness test on April 25, 2007, after she returned from her suspension. The test was administered by Defendant Arrington, with another MDOC employee and a union representative present. Plaintiff again failed the step test portion, this time completing only 65 steps in three minutes. *Defendant's Exhibit G.* The Plaintiff's employment was terminated that day. The Employee Departure Report was signed by Defendant John McCoskey of the Human Resources Department. *Defendant's Exhibit H.*

At ¶ 9 of his affidavit, Defendant Arrington states, "I did not have the authority to

terminate Ms. Scott. my role was simply to administer her physical fitness test and to report the results to my superiors. Other than administering the physical fitness test and reporting the results to my superiors, I played no role in the decision to terminate Ms. Scott."

Both in her complaint and at her deposition, the Plaintiff stated that after the second fitness test, she "was just fired on the spot." *Plaintiff's Deposition, Defendant's Exhibit I*, 51-52. She testified that her termination was based on her race (she is African-American), and that her "white counterparts were given the opportunity to retake the physical fitness test" a third time. *Id.* 53. Asked what made her believe that Defendant Arrington, who is himself African-American, was motivated by racial considerations, she testified as follows:

> Q: What led you to believe that the actions were motivated by race?
>
> A: Mr. Arrington has–he refers to himself a lot in third person. He doesn't – I mean, he doesn't like African Americans himself. And to me he was just a henchman for MDOC, you know, people beneath him, African Americans. He didn't allow MDOC, the authorities, ms. Kathy Warner or Joan Bush, to make that determination from central office to terminate me, he did it on the spot because he's prejudiced, he doesn't like his own kind. He doesn't like African Americans.
>
> Q: And what is the race of Mr. Arrington?
>
> A: He's African American.
>
> \*                          \*                          \*
>
> Q: And you said that Mr. Arrington doesn't like African Americans. What makes you believe that?
>
> A: Just the statements he made referring to himself in third person. All of his friends are white. *Id.* 84-85.

In her response [Doc. #27], at p. 3, the Plaintiff states that after she failed the second test, Defendant Arrington gave her the Employee Departure Report that she has

submitted as Plaintiff's Exhibit C. That report is signed by Mr. McCoskey. She has also submitted two other Departure Reports, attached as Plaintiff's Exhibits D and E, both of which are signed by Mr. McCoskey. No Departure Reports are signed by Mr. Arrington.

The Plaintiff has submitted as Exhibit F a memo dated April 25, 2007, from Mr. Arrington to Warden Clarice Stovall, describing the circumstances of the fitness tests. According to the memo, the Plaintiff appeared to be completely out of breath after her first step test in September of 2006, and had to sit down. Arrington told her that she could take the test again, and encouraged her to start working out. He told her that the steps in the training room were available to her. When Plaintiff took the second step test on April 25, 2007, she had to stop and rest at least twice, resting her head and arms on the wall. Arrington stated that "Captain Edwards, Officer Walton (the union representative), and I tried to encourage her to continue, but she appeared to be completely out of breath." After three minutes, Plaintiff completed only 68 out of the required 78 trips. Arrington states that "John McCoskey, the Personnel Manager, and Craig Czinder of the Officer of Training were all notified."

The Plaintiff has also submitted, as Exhibit H, a memo from Assistant Human Resources Director Phyllis White, dated May 14, 2007. Ms. White witnessed Plaintiff fail the step portion of her first fitness test on September 25, 2006, stating,

> "I remember Officer Scott not completing the allocated number of steps within 3 minutes, she was physically exhausted, sweating and panting, she kept saying that she could not do it; we were encouraging her, telling her that this would be the last time she would have to do it if she passed she kept asking her (sic, how) much time did she have, how many steps had she completed. She just stopped and sat down saying she couldn't do it. Mr. Arrington told her that she had one more attempt and she had time to get herself together and with that she could pass." (Emphasis in original).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III.    DISCUSSION

The Plaintiff does not contest that she failed the step portion of two physical fitness tests. Rather, she alleges that a white corrections officer was permitted to take the test three times, and that the termination of her employment with the MDOC was in fact racially motivated.

An employment discrimination case under ELCRA is analyzed under the same

framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988).

Plaintiff has offered no evidence that Mr. Arrington or anyone in a decision-making position expressly stated a desire to fire her or take any other adverse action based on race. Thus, Plaintiff's claim is based on circumstantial evidence. In such case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination. Once she has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[1] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.

In order to establish a prima facie showing of racial discrimination, the Plaintiff must introduce sufficient evidence that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated

---

[1] This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824. However, this factor may take various forms, depending upon the facts and allegations of a particular case. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, n.6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hazle v. Ford Motor Company*, 464 Mich. 456, 463, n.6, 628 N.W.2d 515 (2001) ("the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand"); *Shah v. General Electric Company*, 816 F.2d 264, 268-271 (6th Cir. 1987) ("However articulated, the significance of the prima facie case is that it permits an 'inference of discrimination...because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'") (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

### A.     Prima Facie Case

The Plaintiff meets the first prong of a prima facie case in that she is a member of a protected class. As to the second factor, she suffered an adverse employment action when she was fired. However, there is no more than a scintilla of evidence that it was Defendant Arrington that undertook the adverse action. Although the Plaintiff testified at her deposition that she was "fired on the spot" after she failed the test, Mr. Arrington states by affidavit that he did not have the authority to fire her, and that all he did was administer the test and report the results to his superiors. This statement is supported by the Plaintiff's own Exhibits C, D, and E, Employee Departure Reports signed not by Mr.

Arrington, but by Mr. McCoskey, the Personnel Manager.[2] Because Arrington had no personal involvement in the decision to terminate the Plaintiff, other than reporting objective test results, he is entitled to summary judgment.

The Plaintiff also fails the third prong of a prima facie case. Because she was unable to pass the physical fitness test after two attempts, a requirement for her position, she was not qualified for the job of corrections officer.

Finally, Plaintiff has presented no evidence, beyond conjecture, that any similarly situated employee who was not a member of a protected class was treated differently. While she alleges that the MDOC allowed Stephanie Moses, a white female, to take the fitness test a third time, Mr. Arrington states, at ¶ 10 of his affidavit, "I do not know Ms. Moses. Nor did I play any role in administering her physical fitness test." The Plaintiff has produced nothing to substantiate her allegations regarding Ms. Moses.

Nor has she offered any other plausible evidence that would give rise to an inference of discrimination regarding Mr. Arrington. "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner v. Square D Co.*, 445 Mich. 153, 164, 516 N.W.2d 475, 480 (1994). Here, Plaintiff offers nothing more than her personal opinion that Mr. Arrington, himself an African American, hates "his own kind" because he speaks of himself in the third person (?) and has white friends. "Mere personal beliefs, conjecture and speculation are insufficient to support an inference" of unlawful discrimination. *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir.1986). *See also Miller v. CVS Pharmacy, Inc*.,

---

[2] The Plaintiff has also submitted, as Exhibit B, an unnotarized statement by Brenda Walton, the union representative who was present at the second fitness test. Ms. Walton recounts some statements that Mr. Arrington made regarding Plaintiff's smoking, but says nothing about Plaintiff being "fired on the spot," or about Arrington making any comments regarding the termination of her employment.

779 F.Supp.2d 683, 693 -694 (E.D.Mich. 2011).

I recognize that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000), citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). But it is not a free pass either, and a plaintiff must present *something* other than speculation and opinion to raise an inference of racial discrimination. The Plaintiff has offered nothing to support the fourth prong of the *McDonnell Douglas* prima facie evidence test, and for that reason, summary judgment for the Defendant is appropriate.

### B. Pretext

Even assuming for the sake of argument that Plaintiff has established a prima facie case, the Defendant has proffered strong evidence that Plaintiff was fired for a non-discriminatory reason. Under MDOC policy, there is an objective standard, applicable to all corrections officers, to determine continued employment after the first year. The employee must pass all parts of a physical fitness test that measures both strength and endurance. Employees are given two opportunities to pass the test, and if they fail the second time, they are out. The Plaintiff failed twice, actually doing worse on her second try. The Defendant has met his burden of showing a non-discriminatory reason for the Plaintiff being fired.

Under the third prong of *McDonnell Douglas*, the burden now shifts back to the Plaintiff to show that the Defendant's stated reasons are pretextual. She may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the termination, or (3) that the proffered reason was not sufficient to motivate the discharge. *Smith v. Leggett Wire Co., supra*, 220 F.3d at 759

(citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)).

The proffered reason for Plaintiff's termination has a clear basis in objective fact: she twice failed a physical fitness test. Moreover, under MDOC policies, that proffered reasons was sufficient in and of itself to motivate the discharge. This leaves only the second factor– that the proffered reason did not actually motivate the termination–and, as discussed in the preceding section, the Plaintiff has utterly failed to support that theory with anything beyond her subjective opinion that Mr. Arrington dislikes people of his own race.

No rational trier of fact could possible find in the Plaintiff's favor as to her claims against Defendant Arrington. Summary judgment should therefore be granted to him.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant Arrington's motion for summary judgment [Doc. #15] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date:  February 23, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 23, 2012.

Tonia Scott
460 California Ave
Pontiac, MI 48341-2511

s/Johnetta M. Curry-Williams
Case Manager