UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONIA SCOTT,                                         Case No. 10-12736

        Plaintiff,                               District Judge Avern Cohn

v.                                                   Magistrate Judge R. Steven Whalen

MICHIGAN DEPARTMENT OF
CORRECTIONS, ET AL.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

      This is an employment discrimination case that was originally filed in the Washtenaw County Circuit Court, and removed to this Court on July 12, 2010. Plaintiff Tonia Scott, who was employed by the Michigan Department of Corrections ("MDOC"), filed claims under Title VII of the Civil Rights Act of 1962, 29 U.S.C. § 2000e, *et seq*. ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq*. ("ELCRA"), naming a number of Defendants, including the Michigan Department of Corrections, Human Resources Officer John McCoskey, and Clarice Stovall, Warden at the Scott Correctional Facility. The Title VII claim was dismissed without prejudice, with this Court retaining supplemental jurisdiction over the ELCRA claim [Doc. #9].

      Before the Court is a motion for summary judgment filed by Defendants MDOC, McCoskey and Stovall [Doc. #30], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

# I. FACTS

On February 23, 2012, I filed a Report and Recommendation [Doc. #32] recommending that Defendant Stan Arrington's summary judgment motion be granted.[1] In that Report and Recommendation, I set forth the basic facts of this case as follows:

> The Plaintiff was employed as a corrections officer at the Scott Correctional Facility. She began her employment in 2005. At the end of their first year, corrections officers are required to pass a physical fitness test, involving push-ups, sit-ups, and a step test. On September 25, 2006, Plaintiff took the test, passing the push-up and sit-up portions, but failing the step test. She was required to do 78 trips in 3 minutes, but completed only 70. In his affidavit, Mr. Arrington states that under MDOC Operating Procedure 02.06.111B, §E, "a failure on any portion of the physical fitness test constitutes a failure of the entire test." At ¶ 6, he states that policy permitted Plaintiff to take the test a second time, but that a failure on the second test would be grounds for dismissal.
>
> A few days later, on September 28, 2006, the MDOC suspended the Plaintiff for the unrelated violation of permitting a prisoner to be escorted through the front gate. The Warden issued a stop entry order prohibiting Plaintiff from the prison grounds, and this order was not lifted until March 23, 2007.
>
> The Plaintiff took her second physical fitness test on April 25, 2007. The test was administered by Defendant Arrington, with another MDOC employee and a union representative present. Plaintiff again failed the step test portion, this time completing only 65 steps in three minutes. The Plaintiff's employment was terminated that day. The Employee Departure Report was signed by Defendant John McCoskey of the Human Resources Department.
>
> Both in her complaint and at her deposition, the Plaintiff stated that after the second fitness test, she "was just fired on the spot." She testified that her termination was based on her race (she is African-American), and that her "white counterparts were given the opportunity to retake the physical fitness test" a third time. (Citations to exhibits omitted).
>
> In her complaint, Plaintiff claims that a white corrections officer, Stephanie Moses, also failed her second physical exam, but was allowed to continue her

---

[1] District Judge Avern Cohn adopted this Report and Recommendation, and granted summary judgment to Defendant Arrington. *See* Doc. #34.

employment after a successful third try. *Complaint,* ¶ 35. At her deposition, Plaintiff said that she did not know Ms. Moses, but learned about her situation "through discovery." *Defendants' Exhibit 1*, Plaintiff's Deposition, 79-81. She testified that Ms. Moses took her physical fitness test "months and months" after Plaintiff's exam. *Id.*

Defendants have submitted as Exhibit 5 the affidavit of Jonathan Patterson, the MDOC Assistant Manager of Labor Relations. Mr. Patterson states that he handled the grievance settlement for probationary Corrections Officer Stephanie Moses. *Patterson Affidavit*, ¶ 2. He states that Moses failed the step portion of her physical fitness test on her second attempt, and was therefore separated from state service. *Id.* ¶¶ 4-5. Moses then pursued a union grievance, presenting evidence that she injured her ankle during the step portion of the test, and that immediately after the test she went to the Concentra Medical Center, where she was treated for an ankle injury. *Id.* ¶¶ 6-8. Mr. Patterson states that "Policy Directive 02.06.111B allows for a probationary employee to retake a test if there is a medical condition that does not allow her to complete the test safely." *Id.* ¶ 9. Once Moses' ankle healed, she re-took the test and passed; she was then returned to her position as a Corrections Officer. *Id.* ¶¶ 11-12. Patterson states that "C/O Moses' ankle injury, not her race, was the determining factor in allowing her to retake the physical fitness test after her second failure." *Id.* ¶ 13.

Plaintiff has now retained an attorney, who filed a response to this motion on August 9, 2012. Plaintiff now contends that she in fact passed the step portion of both physical fitness tests. In support of her claim that she passed the September 25, 2006 test, she has submitted the test form (Plaintiff's Exhibit 6) purporting to show that the number "70" (which indicates a failing score) is superimposed over the number "78" (a passing score). As to the second test, recorded on April 25, 2007 (Plaintiff's Exhibit 8), the

recorded score is 65, which is failing. The sheet is signed by Brenda Walton, Plaintiff's union representative. Nevertheless, Plaintiff argues that there is a question of fact as to whether she received a passing score on the second test. In support, she submits the August 8, 2012 affidavit of Brenda Walton, which states, at ¶¶ 7-8, that she was present at the second test, and that according to her count, the Plaintiff passed the step portion of the test by completing 78 steps. Plaintiff has also submitted an un-notarized statement from Ms. Walton, dated June 19, 2007 (Plaintiff's Exhibit 11), stating that at the second test, Mr. Arrington, the Human Resources Director, was using a counter to count steps, but that she did not look at the counter. She states that Arrington told her that she had counted too many steps. Ms. Walton also states that Arrington made a statement to Plaintiff about her smoking.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. DISCUSSION

While the Defendants' position is that Plaintiff was terminated because she failed the physical fitness test on both the first and second tries, Plaintiff alleges that a white corrections officer was permitted to take the test three times, and that the termination of her employment with the MDOC was in fact racially motivated. Plaintiff also now disputes that she failed either test.

An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988).

Plaintiff has offered no evidence that anyone in a decision-making position expressly stated a desire to fire her or take any other adverse action based on race.[2] Thus,

---

[2] At her deposition, Plaintiff testified as follows:

Q: When Mr. McCoskey came down, did he make any comments based on your race?

A: No.

Q: Did anybody make any comments based on your race?

A: No. *Plaintiff's Deposition*, 61.

Plaintiff's claim is based on circumstantial evidence, and the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination. Once she has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[3] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.

In order to establish a prima facie showing of racial discrimination, the Plaintiff must introduce sufficient evidence that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824.

### A. The Prima Facie Case

The Plaintiff meets the first prong of a prima facie case in that she is a member of a protected class. As to the second factor, she suffered an adverse employment action

---

[3]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

when she was fired. However, it is on the third and fourth factors that her claim falters.

As to the third factor, because Plaintiff was unable to pass the physical fitness test after two attempts, a requirement for her position, she was not qualified for the job of corrections officer. Moreover, Plaintiff's Exhibits do not create a genuine issue of material fact. The document regarding the first test clearly shows that she completed only 70 steps, notwithstanding that the number 70 appears to be written over the number 78. Plaintiff offers no evidence, beyond speculation, that this was the result of chicanery on the part of Mr. Arrington, rather than the correction of an erroneously written number. Moreover, an Exhibit submitted by the Plaintiff herself in response to Arrington's motion for summary judgment, *See* Doc. #27 (Plaintiff's Response), Exhibit H, is a memo from Assistant Human Resources Director Phyllis White, dated May 14, 2007. Ms. White witnessed Plaintiff fail the step portion of her first fitness test on September 25, 2006, stating,

> "I remember Officer Scott not completing the allocated number of steps within 3 minutes, she was physically exhausted, sweating and panting, she kept saying that she could not do it; we were encouraging her, telling her that this would be the last time she would <u>have to do it if she passed</u> she kept asking her (sic, how) much time did she have, how many steps had she completed. She just stopped and sat down saying she couldn't do it. Mr. Arrington told her that she had one more attempt and she had time to get herself together and with that she could pass." (Emphasis in original).

Concerning the second test on April 25, 2007, Plaintiff relies on the week-old affidavit of Brenda Walton, who states that Plaintiff in fact completed the required number of steps. However, Ms. Walton also signed the April 25th form, and did not indicate any disagreement with the results. Furthermore, in contrast to her recent affidavit, Ms. Walton's statement of June 19, 2007 does not indicate how many steps the Plaintiff completed or whether she passed the test. It states only that Mr. Arrington, who was using a counter, told her that she had counted too many steps.

Further undermining the inference that Mr. Arrington mis-counted the steps, and that Plaintiff actually passed the test, is Exhibit F of Plaintiff's previous response to Mr. Arrington's summary judgment motion [Doc. #27], a memo dated April 25, 2007, from Mr. Arrington to Warden Clarice Stovall, describing the circumstances of the second fitness test. According to the memo, the Plaintiff appeared to be completely out of breath after her first step test in September of 2006, and had to sit down. Arrington told her that she could take the test again, and encouraged her to start working out. He told her that the steps in the training room were available to her. When Plaintiff took the second step test on April 25, 2007, she had to stop and rest at least twice, resting her head and arms on the wall. Arrington stated that "Captain Edwards, Officer Walton (the union representative), and I tried to encourage her to continue, but she appeared to be completely out of breath." After three minutes, Plaintiff completed only 68 out of the required 78 trips."

Under these facts, no trier of fact could reasonably find that Plaintiff passed both tests, and was therefore qualified for the job.

Finally, even assuming that Plaintiff meets the first three prongs of a *prima facie* case, including that she was qualified for the job, she has presented no evidence, beyond conjecture, that any *similarly situated* employee who was not a member of a protected class was treated differently. Even if a plaintiff who falls within a protected category is fired and replaced by another employee who is not a member of the protected group, it must be shown that the non-protected employee was "similarly-situated *in all respects*." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)(emphasis in original). The Court in *Mitchell* added:

> "Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct *without such differentiating or mitigating circumstances that*

-8-

> *would distinguish their conduct or the employer's treatment of them for it."*
> *Id.* (Emphasis added).

*See also Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 700, 568 N.W.2d 64 (1997) (comparables must be "nearly identical" in all relevant aspects).

Under this formulation, Stephanie Moses is not similarly situated to the Plaintiff. Apart from Plaintiff's failure to show that either Defendant Stovall or Defendant McCoskey were Moses' supervisors, or that they had any involvement in her case, the circumstances surrounding Moses' reinstatement are completely different from Plaintiff's situation. Like Plaintiff, Moses was immediately terminated after she failed her second physical fitness test. Unlike Plaintiff, Moses presented evidence during her union grievance proceedings that she was injured during her second attempt. Plaintiff neither made a claim nor offered documentation of an injury. As Mr. Patterson explains in his affidavit, an MDOC Policy Directive permits a probationer to retake the test "if there is a medical condition that does not allow her to complete the test safely." *See Defendants' Exhibit 6,* P.D. 02.06.111B, ¶ F. Moreover, under *Mitchell v. Toledo Hospital*, "comparables" who have "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it" are not considered to be "similarly situated." Moses' documented injury was a "differentiating or mitigating circumstance" that clearly distinguishes her from the Plaintiff, who merely challenged the way her performance was counted. Plaintiff has offered nothing to rebut Mr. Patterson's sworn statement that "C/O Moses' ankle injury, not her race, was the determining factor in allowing her to retake the physical fitness test after her second failure." To the contrary, the evidence shows that both the Plaintiff's (*and* Ms. Moses') termination, as well as Ms. Moses' opportunity to take the test a third time were done in compliance with MDOC policy, and not on the basis of race.

I recognize that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000), citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). But it is not a free pass either, and a plaintiff must present something other than speculation and opinion to raise an inference of racial discrimination. The Plaintiff has offered nothing to support either the third or the fourth prong of the *McDonnell Douglas prima facie* evidence test, and for that reason, summary judgment for these Defendants is appropriate.

### B. Pretext

Even assuming for the sake of argument that Plaintiff has established a *prima facie* case, the Defendant has proffered strong evidence that Plaintiff was fired for a non-discriminatory reason. Under MDOC policy, there is an objective standard, applicable to all corrections officers, to determine continued employment after the first year. The employee must pass all parts of a physical fitness test that measures both strength and endurance. Employees are given two opportunities to pass the test, and if they fail the second time, they are out. The Plaintiff failed twice, actually doing worse on her second try. The Defendant has met his burden of showing a non-discriminatory reason for the Plaintiff being fired.

Under the third prong of *McDonnell Douglas*, the burden now shifts back to the Plaintiff to show that the Defendant's stated reasons are pretextual. She may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the termination, or (3) that the proffered reason was not sufficient to motivate the discharge. *Smith v. Leggett Wire Co., supra*, 220 F.3d at 759 (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)).

The proffered reason for Plaintiff's termination has a clear basis in objective fact: she twice failed a physical fitness test.[4] Moreover, under MDOC policies, that proffered reasons was sufficient in and of itself to motivate the discharge. This leaves only the second factor– that the proffered reason did not actually motivate the termination. Plaintiff's only evidence in support of that theory is that Ms. Moses, the white Corrections Officer, was given a third chance to take the test. But as discussed in the preceding section, Moses was not similarly situated to the Plaintiff, and unlike the Plaintiff, Moses suffered an objectively verifiable ankle injury during her second test, which brought her within the ambit of a race-neutral MDOC Policy Directive permitting a re-test. The Plaintiff has not met her burden of showing pretext.

No rational trier of fact could find in the Plaintiff's favor as to her claims against these Defendants. Summary judgment should therefore be granted.

## IV.    CONCLUSION

I therefore recommend that the summary judgment filed by Defendants MDOC, McCoskey and Stovall [Doc. #30] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of

---

[4] Plaintiff now contends that she in fact did pass both fitness tests. As discussed above, that theory finds little support in the objective facts. But even if there were a miscount on one or both of the tests, Plaintiff has submitted nothing to show that this was the result of racial discrimination as opposed to a counting error. Thus, Plaintiff has not shown pretext.

objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Date: August 15, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 15, 2012.

Tonia Scott  
460 California Ave.  
Pontiac, MI 48341-2511

s/Johnetta M. Curry-Williams  
Case Manager